FILED

FEB 11 2020

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 19-135-BLG-DLC |
| Plaintiff, | |
| vs. | ORDER |
| ANTHONY PRETTY ON TOP, | |
| Defendant. | |

On December 26, 2019, Defendant Anthony Pretty On Top ("Pretty On Top") waived his right to a jury (Doc. 15), and the Court conducted a bench trial on January 6, 2020 (*see* Doc. 16). Pretty On Top was present, in person, throughout the proceedings and was represented by Federal Defender Evangelo Arvanetes. Assistant U.S. Attorney Jeanne Torske represented the Government. This Court has jurisdiction under 18 U.S.C. § 3231.

Although the parties stipulated to all facts[1] (Doc. 17), legal issues remained outstanding in connection with Pretty On Top's Rule 29 Motion for Judgment of Acquittal (Doc. 20). Therefore, the bench trial did not conclude with a judgment

---

[1] In its post-trial brief, the Government objects to various exhibits Pretty On Top attached to his post-trial brief. (Doc. 27 at 2–4.) The nature of the exhibits (*see* Docs. 26-1; 26-2; 26-3; 26-4; 26-5; 26-6) permits the Court to take judicial notice, pursuant to Rule 201 (b)(2) and (c)(1), Fed. R. Evid. Ultimately, however, the exhibits were not relevant to the Court's judicial disposition of this matter.

of conviction or acquittal. Instead, the Court set an expedited briefing schedule to allow the parties to fully set out their positions, and the remaining legal issues have now been fully briefed. Having carefully reviewed the evidence, the applicable law, and the parties' arguments as presented at trial and in their written post-trial submissions (*see* Docs. 17; 19; 20; 26; 27; 28; 30), the Court makes and enters the following findings of fact and conclusions of law pursuant to Federal Rule of Criminal Procedure 23(c).

## FINDINGS OF FACT

1. On or about July 26, 2003, Pretty On Top committed aggravated sexual abuse in violation of 18 U.S.C. § 1153, 2241(a), and 5032. At the time of the offense, he was seventeen years old.

2. Pretty On Top pleaded guilty, and on or about May 8, 2006, he was sentenced to a sixty-month term of custody.

3. Following his initial sentencing, Pretty On Top appealed his sentence. The Ninth Circuit Court of Appeals reversed and remanded with instructions to the District Court to determine a sentence consonant with the rehabilitative focus of the Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031–5042, and Circuit precedent.

4. On or about July 10, 2007, the District Court re-sentenced Pretty On Top to a term of official detention of fifty-one months in the custody of the Attorney

General, to be followed by eighteen months of juvenile supervision. This sentence was to run concurrent with the sentence imposed in CR-06-24-BLG-RFC.

5. In the July 10, 2007 Amended Judgment, Pretty On Top "was adjudged a juvenile delinquent in that [he], an Indian person, on July 26, 2003, in Lodge Grass, Montana, did commit an act of juvenile delinquency, Aggravated Sexual Abuse, in violation of 18 U.S.C. §§ 1153, 2241(a), and 5032."

6. As part of the July 10, 2007 Amended Judgment, the Court stated Pretty On Top would be subject to "all conditions of supervised release ordered in CR-06-24-BLG-RFC."

7. Those conditions stated that Pretty On Top "shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer."

8. On or about November 9, 2009, Pretty On Top completed his initial registration.

9. During early Spring 2019, Pretty On Top resided in the Yellowstone County Detention Facility ("YCDF"). At that time, his registration was up to date and correct.

10. On or about April 4, 2019, Pretty On Top was released from YCDF.

11. Following his release, Pretty On Top failed to update his registration.

12. Law enforcement officers attempted to locate and contact Pretty On Top. They visited his last known address, the homes of his family members, and the homes of his associates.

13. Law enforcement officers were unable to locate or contact Pretty On Top.

14. During the investigation, law enforcement officers learned that Pretty On Top was transient, living on or near the Crow reservation, which is Indian country.

15. Law enforcement officers contacted Crow Sex Offender Registry officials, Big Horn County registry officials, Yellowstone County officials, and queried the State of Montana database to determine if Pretty On Top had registered.

16. Pretty On Top was not registered in any jurisdiction.

17. On or about May 21, 2019, Pretty On Top was listed as non-compliant in Montana's Sexual or Violent Offender Registry ("SVOR") database.

18. As of the date of the Indictment, October 18, 2019 (*see* Doc. 1), Pretty On Top was still non-compliant and had not updated his registration since his release from YCDF in April 2019.

## CONCLUSIONS OF LAW

### I. Elements of aggravated sexual abuse

1. A defendant commits the offense of failure to register as a sex offender, in violation of 18 U.S.C. § 2250(a), if the United States proves, beyond a reasonable doubt, the following elements: (1) the defendant is required to register under the

Sex Offender Registration and Notification Act ("SORNA"); (2) the defendant is a sex offender by virtue of a federal conviction; and (3) the defendant knowingly failed to update or register as required.

**II.     Pretty On Top failed to register as a sex offender.**

2.     On or about July 10, 2007, Pretty On Top, an Indian person, was adjudged a juvenile delinquent because he committed an act of juvenile delinquency, aggravated sexual abuse, in violation of 18 U.S.C. §§ 1153, 2241(a), and 5032. As a result, Pretty On Top is a Tier III sex offender as defined in 31 U.S.C. § 20911(4)(A)(i).

3.     Due to his status as a Tier III sex offender, Pretty On Top is required to comply with SORNA's registration requirements, including: (1) keeping his registration current, pursuant to 18 U.S.C. §20913(a), (c); (2) providing registry officials with detailed information, pursuant to 18 U.S.C. § 20914(a); and (3) registering for life, pursuant to 18 U.S.C. §20915(a)(3), unless his registration period is reduced pursuant to 18 U.S.C. § 20915(b). There is no indication that Pretty On Top's period of registration has been reduced; therefore, he is required to keep his registration current and register for life. This requirement applies to juveniles as well. *See United States v. Juvenile Male*, 670 F.3d 999, 1005 (9th Cir. 2012); *United States v. Juvenile Male*, 255 P.3d 110 (Mont. 2011).

4. On or about April 4, 2019, Pretty On Top was released from YCDF. Following his release, Pretty On Top failed to update his registration. On or about May 21, 2019, Pretty On Top was listed as non-compliant in the SVOR database. As of October 2019, Pretty On Top was still non-compliant and had not updated his registration since his release from YCDF in April 2019. Pretty On Top has not updated and maintained his registration as required by SORNA.

### III. Pursuant to Ninth Circuit law, applying SORNA to Pretty On Top does not violate his constitutional rights.

#### A. Challenges under the Fifth, Eighth, and Fourteenth Amendments

5. "A district judge may not respectfully (or disrespectfully) disagree with his learned colleagues on his own court of appeals who have ruled on a controlling legal issue[.]" *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001). "[C]aselaw on point *is* the law." *Id.* (emphasis in original). Therefore, the Court must follow binding authority "unless and until overruled by a body competent to do so." *Id.*

6. Pretty On Top acknowledges that the Ninth Circuit's decision in *Juvenile Male* controls most of his constitutional challenges, but argues that salient facts related to juvenile recidivism rates call for reconsideration. (Doc. 20 at 4, 7–8.) In *Juvenile Male*, the Court held that: (1) SORNA's requirements do not violate the Equal Protection Clause; (2) SORNA's requirements do not violate the Eighth Amendment's guarantee against cruel and unusual punishment; and (3) SORNA's

requirements do not infringe substantive or procedural due process rights. *Juvenile Male*, 670 F.3d at 1009–10, 1012–14.

7. *Juvenile Male* is the law, and the Court must follow its authority, unless and until it is overruled by the Ninth Circuit or United States Supreme Court. Accordingly, the Court denies Pretty On Top's Rule 29 Motion (Doc. 20) as it relates to his constitutional arguments under the Fifth, Eighth, and Fourteenth Amendments, as the Ninth Circuit has already ruled on these issues.

8. Pretty On Top attempts to circumvent *Juvenile Male* by framing his substantive due process argument in terms of the irrebuttable presumption doctrine. (Doc. 30 at 3.) He contends that SORNA impermissibly ties his juvenile conviction to the likelihood that he is dangerous and will recidivate, to conclude that the "adequacy of the 'fit' for SORNA as to juvenile sex offenders and the policies supposedly serving juvenile sex offender registration is simply lacking." (Docs. 20 at 6–7; 30 at 3–4.) However, despite styling his substantive due process challenge under the irrebuttable presumption doctrine, Pretty On Top's argument remains foreclosed by *Juvenile Male*.

9. The Supreme Court has determined "that if it is not 'necessarily or universally true in fact' that the basic fact implies the presumed fact, then the statute's irrebuttable presumption denies due process of law." Note, *The Irrebuttable Presumption Doctrine in the Supreme Court*, 87 HARV. L. REV. 1534

(1974) (citing *Vlandis v. Kline*, 412 U.S. 441, 452 (1973)). "'[I]rrebuttable presumption' cases must ultimately be analyzed as calling into question . . . the adequacy of the 'fit' between [a statute's] classification and the policy the classification serves." *Michael H. v. Gerald D.*, 491 U.S. 110, 121 (1989) (citations omitted). Therefore, as one commentator has observed, analysis under the irrebuttable presumption doctrine "bears more resemblance to the scrutiny of legislative means and ends associated with equal protection than to the procedural aspects of due process." Note, *supra*, at 1535–36. Successfully challenging the adequacy of the "fit" between a statute's classification and its policy on substantive due process grounds (*see* Doc. 30 at 4), "is, of course, predicated on the assertion that [the challenger] has a constitutionally protected liberty interest." *Michael H.*, 491 U.S. at 121.

10. The fundamental liberty interests protected by the Fourteenth Amendment "are few." *Juvenile Male*, 670 F.3d at 1012. "[P]ersons who have been convicted of serious sex offenses do not have a fundamental right to be free from [] registration and notification requirements." *Doe v. Tandeske*, 361 F.3d 594, 597 (9th Cir. 2004). Government action that implicates "anything less than a fundamental right require[s] only that the government demonstrate 'a *reasonable relation* to a legitimate state interest to justify the action.'" *Id.* (quoting *Washington v. Glucksberg*, 521 U.S. 702, 722 (1997)) (emphasis in original). Sex

offender registration requirements serve "a legitimate nonpunitive purpose of public safety, which is advanced by alerting the public of the risk of sex offenders in their community." *Juvenile Male*, 670 F.3d at 1012 (quoting *Tandeske*, 361 F.3d at 597).

11. Pretty On Top proffers no fundamental interest on which SORNA's registration requirements infringe. (*See* Doc. 30 at 4–5.) And, in light of *Juvenile Male*'s analysis, any effort by the Court to find one on his behalf would be futile. The Ninth Circuit determined that SORNA's registration requirements bear a constitutionally reasonable relationship to the statute's nonpunitive policy goals, notwithstanding Pretty On Top's conclusory assertion that the "fit" between SORNA's classification—persons convicted of an enumerated sex offense—and its policy is "simply lacking." (Doc. 30 at 4.)

12. Because Pretty On Top has no constitutionally protected liberty interest that SORNA's registration requirements burden, and because the fit between the statute's classification and its policy is adequate, the Court denies Pretty On Top's Rule 29 Motion (Doc. 20) on the irrebuttable presumption doctrine.

### B. Challenge under the *Ex Post Facto Clause*

13. "Article I, Section 10 of the Constitution bars the enactment of any law that imposes a *punishment* for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *United*

*States v. Elkins*, 683 F.3d 1039, 1044 (2012) (citation and internal quotation marks omitted) (emphasis added). When it enacted SORNA, Congress intended to "create a regulatory scheme . . . for the purpose of establishing a national system for the registration of sex offenders." *Id.* The statute is not "so punitive in purpose or effect as to negate" Congress's intent. *Id.* at 1044–45 (citation omitted). Therefore, "requiring a person to register under SORNA based on a conviction entered prior to SORNA's enactment does not violate the Ex Post Facto Clause." *Id.* at 1045.

14. Under binding Ninth Circuit precedent, the Court denies Pretty On Top's Rule 29 Motion (Doc. 20) as it relates to his argument that SORNA's registration requirements constitute criminal punishment, rather than civil regulation. SORNA does not constitute illegal punishment under the Ex Post Facto Clause as it applies to Pretty On Top.

15. Finally, the Court declines to engage in the hypothetical argument Pretty On Top advances in the second part of his post-trial brief. (Doc. 26 at 8–9.) It is undisputed that, at the time the Government filed the Indictment (Doc. 1), Pretty On Top was non-compliant with his registration requirements under either SVOR or SORNA (*see* Docs. 1; 26 at 8). Therefore, as meritorious as his argument may be on different facts, it is inapposite here.

## **VERDICT**

The defendant, Anthony Pretty On Top, is GUILTY of failing to register as a sex offender, in violation of 18 U.S.C. § 2250(a).

DATED this 11th day of February, 2020.

*Dana L. Christensen*
Dana L. Christensen, Chief Judge
United States District Court